The privilege extending to aliens the right of a jury de medietatelinguae was granted by statute 28 Ed. III., ch. 13, reenacted by 8 Hen. VI., ch. 29. It is contended that those statutes are in force in this State, and that that privilege has been improperly withheld from the prisoner in this case. It is said that the act of 1715, New Rev., ch. 5, enforces those statutes. That act declares that all statute laws of England providing for the privileges of the people, limitations of actions, preventing vexatious lawsuits, immorality and fraud, confirming inheritances and titles to land, shall be in force. It is further argued that the act of 1778, New Rev., ch. 133, embraces them. That act declares that all such statutes and such parts of the common law as were in force and use and are not destructive of or repugnant to the freedom and independence of this State, etc., and which have not been provided for, in whole or in part, etc., are declared to be in full force.
If those British statutes were in force before the revolution, I do not think the latter act of Assembly excluded them; but I do not think they were in force by the first recited act. That act, as far as it relates to this question, enforces such as provided for the privileges of the people; the statutes in question provide for the privileges of aliens. I admit, however, that many statutes of Great Britain had become (205) the law of this State before the time of passing that act. When the State was first settled as a colony of Great Britain, the colonists brought with them, as their birthright, the laws of the mother country, namely, such parts of the common law, and statutes that were incorporated with it, as were suitable to their situation at the time of their migration; such as the statute of 4 Ed. III., ch. 7, e bonis asportatis invita testatoris, the statute of uses, and the statutes of Eliz., against fraudulent conveyances to defraud creditors, etc. And if the statutes we are now considering were suitable and proper for the government and well-being of the colonists at that time, and were not afterwards repugnant to or inconsistent with the freedom and independence of the state and form of government therein established, I admit they are in force at this time. But it seems to me that those statutes were in their nature local; they were founded more in commercial policy than in general principles *Page 90 
calculated to answer alone the ends of justice and reach the objects of criminal law. They both speak for themselves. The statute of Hen. VI. premises that for want of such regulations "many merchant aliens have withdrawn, and daily do withdraw them, and eschew to come and be conversant on this side of the sea, and likely it is that all the said merchant aliens will depart out of the same realm of England if the said last statute be not more fully declared, and the said merchant aliens ruled, governed, and demeaned in such inquests according to the first ordinance aforesaid, to the great diminishing of the king's subsidies, and grievous loss and damage of all his said realm of England; and our lord the king, willing therein to provide for the weal and profit of him and all his realm, and to eschew the damages and inconveniences which may easily happen in this behalf, and also to give the said merchant aliens the greatest courage and desire to come with their wares and merchandises into this realm: by advice of the lords, etc., it is declared," etc. It will be kept in view that this statute was reenacting the statute of Ed. III., which first gave the privilege to aliens, which statute it was (206) supposed had been repealed by the statute of Hen. V., in the preceding reign.
In the infancy of the settlement of this country the habits of the colonists were agricultural; their trade and commerce were altogether in the hands of the mother country. A quite different policy prevailed from that which dictated the statutes of Ed. III. and Hen. VI.; and the question we have now to decide is, not whether such a law extending the privilege to aliens would be suitable to our present situation, as it seems many of the States have thought it would be, but whether it was suitable to our situation as an infant colony at that time; for if that was not the case, and on that account it was not adopted at that time, it is not the law at this day, for it has never been enforced by any positive law.
I therefore think, as the reasons which induced the Parliament in England to enact those statutes were not good reasons why they should be enforced by the colonists, as not being applicable to their then situation, the court below gave a correct judgment in refusing the prisoner the jury he prayed for.